IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:21-CV-00172-KDB-SCR

| | |
|---|---|
| AURELIA SHERRILL, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AZIYO BIOLOGICS, INC., et. al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on the "Partial Motion to Dismiss by Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc, and Spinalgraft Technologies, LLC" (the "Motion"). (Doc. No. 44), as well as the parties' briefs and exhibits. (Doc. Nos. 44, 47 & 48).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

For the reasons set forth below, the undersigned respectfully recommends that Defendants' Motion be <u>granted</u>.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Accepting as true the factual allegations of the Second Amended Complaint, on April 6, 2021, Aurelia Sherrill was implanted with FiberCel[1] as part of a spinal surgery. (Doc. No. 41 at ¶¶

---

[1] FiberCel Fiber Viable Bone Matrix ("FiberCel") is a Human Cellular and Tissue Based Product (HCT/P) which consists of processed human bone tissue. Federal regulations define HCT/Ps as "articles containing or consisting of human cells or tissues that are intended for implantation, infusion, or transfer into a human recipient." 21 C.F.R. § 1271.3(d). FiberCel is human tissue consisting of cancellous bone particles with preserved living cells, combined with demineralized cortical fibers. (2nd Am. Compl. ¶ 21). FiberCel is "used as a bone void filler in various orthopedic and

36-37). Plaintiff alleges that the FiberCel used in her procedure was contaminated with Mycobacterium tuberculosis ("TB"). (Id. at ¶¶ 38, 40). Plaintiffs further allege that, as a result of the FiberCel implant, Mrs. Sherrill contracted TB, underwent a medical protocol to manage her TB diagnosis, and suffered severe side effects from her TB treatment. (Id. at ¶¶ 44, 47).

Plaintiffs' Second Amended Complaint alleges causes of action against Defendants Aziyo Biologics, Inc. ("Aziyo"), Medtronic Sofamor Danek USA, Inc. ("Medtronic"), and Spinalgraft Technologies LLC ("Spinalgraft") for negligence (Count I), defective design under N.C.G.S. § 99B-6 (Count III), breach of implied warranty under N.C.G.S. § 25-2-314 (Count IV), breach of express warranty (Count V), loss of consortium (Count VIII), and punitive damages (Count IX). (Id.)

On October 26, 2023, Defendants Aziyo and Medtronic moved to dismiss Plaintiffs' breach of warranty claims arguing that they are precluded by North Carolina's blood and tissue shield statute, N.C. Gen. Stat. § 130A-412.30. (Doc. No. 44 at 1).

In their response, Plaintiffs counter that Defendants' Motion is untimely and that Defendants "have misconstrued North Carolina's tissue shield statute and have relied upon authorities that are factually distinguishable." (Doc. No. 47 at 1).

Defendants' Motion has been fully briefed and is ripe for disposition.

---

spinal procedures and marketed for use in orthopedic and reconstructive bone grafting procedures." (Id. at ¶¶ 21–22). Defendant Aziyo Biologics, Inc. ("Aziyo") is alleged to have "developed, manufactured, marketed, promoted, distributed, and supplied" FiberCel. (Id. at ¶ 5.) Defendants Medtronic Sofamor Danek USA, Inc. and SpinalGraft Technologies, LLC (collectively, "Medtronic") are alleged to have been "the exclusive U.S. distributor of the FiberCel product manufactured by Aziyo." (Id. at ¶ 10.) See FiberCel Instructions for Use ("IFU"), https://www.aziyo.com/wpcontent/uploads/2020/07/IFU-0021-Rev03-FiberCel.pdf. The Second Amended Complaint refers to, and quotes directly from, the FiberCel IFU and Plaintiffs do not dispute the accuracy of the publicly available FiberCel IFU. Accordingly, the Court may take judicial notice of it. See Yates v. Mun. Mortg. & Equity, LLC, 744 F.3d 874, 881 (4th Cir. 2014) (taking judicial notice of content of publicly available documents in the record). Even though matters outside the pleadings are generally not considered on a Rule 12(b)(6) motion, the Court may consider documents incorporated into the complaint or matters of judicial notice without converting the motion to dismiss into one for summary judgment. Plymouth Cty. Ret. Ass'n v. Primo Water Corp., 966 F. Supp. 2d 525, 536 (M.D.N.C. 2013).

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8[of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III. DISCUSSION

#### A. Timeliness of Defendants' Motion

Plaintiffs submit that their First Amended Complaint (Doc. No. 11) was identical to the Second Amended Complaint concerning the warranty claims and facts alleged in support of them and these Defendants answered the First Amended Complaint but did not move to dismiss. As a result, Plaintiffs argue Defendants' Motion to Dismiss the same claims in the Second Amended Complaint is untimely or waived. (Doc. No. 47 at 2-6). Plaintiffs rely primarily on Rowley v. McMillan, 502 F.2d 1326, 1332–33 (4th Cir. 1974) (refusing to permit a defendant to "revive" the defense of lack of personal jurisdiction through a motion to dismiss filed in response to a subsequent amended complaint). The Rowley Court was clear, however, that "[a]n unasserted defense available at the time of response to an initial pleading may not be asserted when the initial

pleading is amended." 502 F.2d at 1333 (emphasis added).  It is also clear in Rowley that the Defendant (the Director of the United States Secret Service) was seeking to raise a personal jurisdiction defense and had not raised that issue in his response to the initial complaint, but rather raised it for the first time by motion in response to a subsequent amended complaint.  Id. at 1332.

Here, a closer examination of the record shows that Defendants' Answers to the First Amended Complaint contained the following "Twenty-First Affirmative Defense:" "Plaintiffs' claims are barred, in whole or in part, by N.C.G.S. § 130A-412.30" (Aziyo's Answer Doc. No. 13 at 22) and "Plaintiffs' claims for breach of implied and express warranties are barred, in whole or in part, by N.C. Gen. Stat. § 130A-412.30." (Medtronic's and Spinalgraft's Answer, Doc. No. 12 at 45;).  In short, Defendants did not fail to assert the defense at issue here.[2]  See Seamster v. Taylor, No. 4:21CV00021, 2022 WL 355297, at *1–2 (W.D. Va. Feb. 7, 2022) (where defendants' answer stated they intended to rely on defenses including "contributory negligence" they had sufficiently pled the defense and plaintiff's motion to strike it was denied).  "An affirmative defense may be pleaded in general terms and will be held to be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense."  Id. at 1 (quoting Clem v. Corbeau, 98 F. App'x 197, 203 (4th Cir. 2004) (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1274, at 455–56 (2d ed. 1990))).[3]  Having raised their warranty defense in their prior filings, Defendants did not waive this defense and the Motion is timely.[4]

---

[2]Although Plaintiffs argue only Defendants' alleged failure to assert their warranty defense in response to the First Amended Complaint, it is clear that Defendants also did not fail to assert it in response to the Initial Complaint. Aziyo raised the same Affirmative Defense in its initial Answer (Doc. No. 6 at 20).  Plaintiffs filed the First Amended Complaint before Medtronic's and Spinalgraft's answers were due. (Doc. No. 11).

[3]The Court recognizes that a warranty defense is not one of the Rule 8(c) enumerated defenses that must be pled as an affirmative defense, but the logic is helpful.  Defendants here raised their warranty defense in their answers and now seek to enforce it by dispositive motion.

[4] In their Reply, Defendants argue that if untimely their Rule 12(b)(6) Motion could be treated as a timely Rule 12(c) Motion.  (Doc. No. 48 at 1-2).  Since the warranty defenses were not waived and were timely asserted, the Court need not further address that argument.

### B. N.C. Gen. Stat. § 130A-412.30

The North Carolina statute at issue states in its entirety:

**§ 130A-412.30. Use of tissue declared a service; standard of care; burden of proof**

The **procurement, processing, distribution or use** of whole blood, plasma, blood products, blood derivatives **and other human tissues such as** corneas, **bones** or organs **for the purpose of injecting, transfusing or transplanting any of them into the human body is declared to be, for all purposes, the rendition of a service by every participating person or institution**. Whether or not any remuneration is paid, the service is declared not to be a sale of whole blood, plasma, blood products, blood derivatives or other human tissues, for any purpose. **No person or institution shall be liable in warranty, express or implied, for the procurement, processing, distribution or use of these items** but nothing in this section shall alter or restrict the liability of a person or institution in negligence or tort in consequence of these services.

N.C. Gen. Stat. § 130A-412.30 (emphasis added). At the outset, the Court finds that the plain language of this statute bars Plaintiffs' warranty claims. Id. The use of "human tissues such as … bones" falls within the statute. Id. There is no dispute that FiberCel is processed bone tissue. The statute plainly declares the "use" or "processing" of such a product to be a "service" and that there is no liability "in warranty, express or implied." Id.

In an attempt to avoid the statute's preclusive effect, Plaintiffs first argue that the absence of the phrase "tissue products" in the statute removes FiberCel from its scope because FiberCel is bone that is "process[ed] and engineer[ed] … into complex medical products for sale." (Doc. No. 47 at 7). This argument ignores the statute's clear wording that it is inclusive of "processing" or "use" of "other human tissues such as…bone." N.C. Gen. Stat. § 130A-412.30 (emphasis added). And the statute isn't limited to "bone," but also encompasses "other human tissues," with "bone" just being an example. The term "processing" also is not subject to any modifiers implying that only "simple" processes as opposed to "complex" ones are covered.

Although no North Carolina appellate court has had an opportunity to weigh in on this issue, courts considering identical or similar statutes have found that warranty claims on a product such as FiberCel are barred. Doe v. Am. Nat. Red Cross, 798 F. Supp. 301, 305 n. 12 (E.D.N.C. 1992) (noting a prior codified version of the North Carolina statute has an obvious purpose to prohibit application of warranty or products liability claims); Condos v. Musculoskeletal Transplant Foundation, 208 F. Supp. 2d 1226, 1227-29 (D. Utah 2002) (analyzing warranty and strict liability claims together "[b]ecause warranty claims require essentially the same analysis as strict liability" and concluding that because "human bone tissue is not a 'product,'" those claims were barred); Palermo v. LifeLink Found., Inc., 152 So.3d 1177, 1181 (Miss. Ct. App. 2014), aff'd 152 So.3d 1099 (Miss. 2014) ("[H]uman tissue provided to others in medical procedures is not a "product" and "[t]he case law reflects that there is a nationwide antipathy over applying products liability or strict liability concepts to body parts such as blood and tissue.") (citations omitted); Poole v. Alpha Therapeutic Corp., 698 F. Supp. 1367, 1369-70 (N.D. Ill. 1988) (noting that "[w]hile the [blood and tissue shield] statutes often vary in language, courts interpreting them have uniformly held that they bar strict liability."); Zichichi v. Middlesex Mem'l Hosp., 528 A.2d 805, 808-09 (Conn. 1987) (observing that "[w]hile the wording of the various 'blood shield' statutes varies, courts construing these statutes uniformly hold that they constitute a complete bar to any action based on strict liability."); Roe v. Miles Labs., Inc., 740 F. Supp. 740, 742 (D. Alaska 1989) (observing that "implied warranty claims . . . are indistinguishable from strict liability claims" and concluding the statute was "sufficiently broad to preclude strict liability claims with respect to the sale of blood, blood plasma or other human tissue or organs."); Aberbach v. Biomedical Tissue Servs., Ltd., 48 A.D.3d. 716, 717 (N.Y. 2d Dept. 2008)(finding express and implied warranties claims should have been dismissed); Wamsley v. Lifenet Transplant Services, Inc., 2011 WL

5520245 at *8 (S.D. W. Va. Nov. 10, 2011) (applying statute similar and finding blood and tissue distributors are rendering a service when they provide human blood and tissue products).

Additionally, in a Multi-District Litigation ("MDL") in the Southern District of West Virginia, the Court held that the plain language of multiple similar tissue shield statutes, among other things, foreclosed warranty claims against the defendant processor of a human tissue allograft. See, e.g., Coloplast Corp. Pelvic Support Sys. Products Liab. Litig. ("In re Coloplast"), 219 F. Supp. 3d 577, 581 (S.D.W. Va. 2016) (applying Ohio statute similar to the North Carolina statute); In re Coloplast, 220 F. Supp. 3d 731, 735 (S.D.W. Va. 2016) (applying South Carolina statute); In re: Coloplast Corp., 221 F. Supp. 3d 784, 789 (S.D.W. Va. 2016) (applying Arkansas statute); In re: Coloplast, 2016 WL 6954742 (S.D. W. Va. Nov. 22, 2016) (applying Kentucky law); In re: Coloplast, 2017 WL 6417807 (S.D. W. Va. Dec. 15, 2017) (applying Oregon law); In re: Coloplast, 2016 WL 6901778, n. 2 (S.D. W. Va. Nov. 22, 2016) (applying California law).

Concerning the Ohio statute and plaintiffs' strict liability and warranty claims, Judge Goodwin wrote:

> Ohio's blood and human tissue shield statute…states:
>
>> [T]he procuring, furnishing, donating, processing, distributing, or using of human whole blood, plasma, blood products, blood derivatives, and products, corneas, bones, organs, or other human tissue except hair, for the purpose of injecting, transfusing, or transplanting the fluid or body part in another human body, is considered for all purposes as the rendition of a service by every person participating in the act and not a sale of any such fluid or body part. No warranties of any kind or description are applicable to the act.
>
> Ohio Rev. Code Ann. § 2108.30. Where a statute such as this one clearly defines the "procuring, furnishing, ... or distribution" of blood and human tissue as "the rendition of a service," there can be no sale of a product subject to products liability actions. See Morse v. Riverside Hosp., 44 Ohio App.2d 422, 339 N.E.2d 846, 851 (1974) ("By virtue of R.C. 2108.11, the procuring, furnishing or distribution of

human whole blood or blood products is declared for all purposes to be a rendition of a service by every person and it declared not to be a sale a matter of law.") . . . The plaintiffs' warranty claims also fail by the plain language of the statute: "No warranties of any kind or description are applicable to the act." Ohio Rev. Code Ann. § 2108.30.

In re: Coloplast, 219 F. Supp. 3d 577, 580 (S.D.W. Va. 2016).

The same logic applies here. The plain language of the North Carolina statute bars both express and implied warranty claims: "No person or institution shall be liable in warranty, express or implied, for the procurement, processing, distribution or use of these items. . . ." N.C. Gen. Stat. § 130A-412.30. Accordingly, the undersigned respectfully recommends that Defendants' Motion be granted.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully recommends that the "Partial Motion to Dismiss by Aziyo Biologics, Inc., Medtronic Sofamor Danek USA, Inc, and Spinalgraft Technologies, LLC" (Doc. No. 44) be **GRANTED** and that Plaintiffs' claims for breach of implied and express warranty be **DISMISSED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on

that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED.**

Signed: March 29, 2024

Susan C. Rodriguez
United States Magistrate Judge